Good morning. My name is John Campbell. I'm here representing Samvel Topchian, who is here today with us. This has largely been his fight. It arose as a pro se matter in an attempt to earn the right to continue to pay on a contract. We entered in this case at the appellate level, and I rarely start by telling a court what a case isn't, but I feel somewhat compelled to do that today. I am well aware of the fact that this court and many courts around the country have faced a number of mortgage cases in which people said, show me the note or I get a free house. People have argued that the MERS involvement meant that the deed of trust was invalidated. The debt was unsecured. This isn't that case. This is a case in which Mr. Topchian seeks the right to continue to pay on a contract that was accepted and ratified by Chase. It's all he seeks. And it arose pretty simply. He paid from May of December of 2009 on what is typically known as trial period payments under a modification. He made those payments for seven months, although they were required for three because Chase did not respond. They ultimately sent a permanent modification. He immediately signed it, sent it back, awaited their acceptance, and under the terms of that agreement, they were to accept unless there were material changes. He didn't hear from any good citizen, responsible borrower. He called and said, I haven't heard from you, and you didn't take my first payment. At that point, Chase had a chance to say, there's no deal. You're mistaken. We don't agree. Instead, Chase apologized, accepted that payment and April's payment in that moment, said, we had a mess with Washington Mutual. We got a lot of documents. We apologize. He said, well, why haven't I received a signed agreement from you? And they said, we don't do that anymore, but please, you have a deal. It'll get processed. Send your payments. It didn't stop there. He then sent the payments. This was in March that this happens. He sent the payments through December of 2010 before Chase called and said, no, you don't have a deal. Now, two other people. They accepted the payments. They accepted the payments, yes, Your Honor, every month until December of 2010. That's when they called and said, there's no deal. Now, interestingly, he'd been paying $987,000 in 2009. The new agreement asked him to pay $955,000 or $958,000. He paid that for all those months. And so Chase's position is, well, it said it had to be signed by us or it's not a deal. But, of course, the law does not recognize or somehow eliminate the possibility of ratification or acceptance. In this case, he both had an oral promise that this was a deal, an assurance that the reason he hadn't received a signed agreement was because of a change in position by the defendant. He then acted in reliance upon that promise, performed under the new deal, and they accepted those payments for seven months. I said in my brief, and I didn't mean to be hyperbolic, that the idea that this does not form a contract would make many first-year law students cringe. And I, as my full-time job as a professor now, cringed a little too. This is a contract, and it's irrelevant that it's a mortgage. It's irrelevant that it's HAMP. Chase makes a half-hearted argument to say this doesn't fall within the statute of frauds. That's their attempt to say it had to be in writing. The statute of frauds is alive and well under Missouri law. In fact, I believe it's alive and well under every state's law, and it makes clear that partial performance is an exception to the statute of frauds, as is detrimental reliance, as is promissory estoppel. Here, my client believed something told to him by an executive director, and then he didn't, you know, it wasn't like some call representative said, yeah, you got a deal. He believed it. He said, let me send you another signed agreement. He faxed it to him while on the phone, said, let me FedEx the payments right away. The payments they'd previously rejected they then accepted, and then took six more. Mr. Toccian's only claim arose when they continued to attempt to foreclose. The record is, I think, clear on this, but I do want to express it. He showed up in court multiple times at the courthouse steps and said, please don't take my house. I was paying, and I want to keep paying, pro se. And it was only when this happened multiple times that he filed a claim in small claims court, the best he knew how to do because he went and asked a clerk, and they said, yes, file something. You can do that. And he did. To say they made a federal case out of it, the fact I'm standing here, is not too much to say. They did. They removed it. They attacked, and they sought to dismiss these facts. Now, I will readily admit that what Mr. Toccian pled is not what I would have pleaded. But I'll say this. It's different in two ways. One, I probably wouldn't have had as many facts in it. And two, I would have used names for the legal labels. But that does not a deficient complaint make. This is a detailed factual complaint all the way down to dates, names, and phone numbers. Does it meet Iqbal's standards? Yes, Your Honor. Absolutely. In fact, interestingly under Iqbal, the very thing that Chase says is deficient, the legal names, mean absolutely nothing. If I pled a complaint that said negligence, you know, fraudulent misrepresentation, negligent misrepresentation, breach of contract, end, it'd be dismissed. And if I pled all the elements conclusorily, you know, defendants very rightfully under Iqbal and Twombly highlight all those conclusory allegations, immediately say, court, throw all those out and let's read the facts. In this case, Mr. Toccian is a pro se litigant. Twice pled petitions that were detailed. I didn't have to hunt for who did it, when they did it, what they said, where they were when they said it, how they said it, why they said it, what he did in response. Those state claims, I mean, to put this in legal perspective, either they made a contract, which is what I believe happened, or the executive director, a guy named Freeman, when he said you have a deal, count on it and send us money, he either lied or he negligently misrepresented the facts. And that's the legal box Chase is in. This is a deal or their own representative, high ranking, spoke with authority and said it's a deal when he couldn't. Those state claims. So what contractual duties did he plead that were breached? Well, he pleaded that they refused to accept payments beginning in December of 2010. It's clear, I believe it's an allegation, let me tell you so I don't guess. Allegation 12 of the more definite statement, in which he says, payment for the property was stopped on January of 2011 because of this update, not by plaintiff but by Chase. And recognize these are somewhat vague, but inferences for the plaintiff, and I have talked with my client. Chase told him you don't have a deal, and as this court may be aware from all those mortgage cases, one thing you do learn is the minute they say you don't have a deal, they won't take your payments. The other thing I would point out is that when you send in an amount that is one penny too low, and this is alleged, at 20, paragraph 20, if you send in an amount that is too low, they reject your payment. It is not a mortgage company's practice in this day and age to take payments that are partial. They'll simply say it's insufficient. So when my client paid one amount, which thank God he pled it better than I did, 985, and then he paid 957.32, and they took that, they were accepting a new amount under a new agreement. And there is no doubt that that's what happened, and in fact we have to take that as true, because he said Chase would never accept any payment less than the determined amount at allegation 20,  So I think it boils down to this, Your Honor. We asserted a breach of contract claim. We asserted a negligent misrepresentation and a fraud claim and an unjust enrichment claim. These were the most logical legal labels to give a detailed factual story. I would ask this court to please consider those facts in light of the law, to recognize they state a claim, and to recognize that to hold otherwise is to hold a pro se litigant to a standard that the U.S. Supreme Court has rejected. In Erickson v. Pardis, cited in our brief, the U.S. Supreme Court made clear that we liberally construe pro se litigant claims, and we give them every benefit of the doubt to summarize just a bit. That was in 2007. That's with a close to current court, and certainly with the justices who decided Iqbal and Twombly. We have no reason to believe that's not still the law. Liberally construing this claim, the only harm that will happen is that Mr. Topchin gets to go fight to make payments on his home. Narrowly construing it will kick him out of his house. You're talking about which claim do you think he makes the case on? I believe he makes the claim on contract, negligent misrep, fraudulent misrep, and unjust enrichment. And, Your Honor, I do see that I'm very close to running out of all my time, so I will reserve the rest unless there are questions. Thank you. We will hear from the bank. Mr. Naney. Is it pronounced Naney or Naney? It's Naney. Naney. Very well. You may proceed, sir. Thank you, Your Honor. All of these causes of action that Mr. Campbell mentioned were never raised in- Would you raise the lectern a little bit so you're closer to the-maybe it's as high as it will go. It is. Okay. Here we go. How's that? Is that better, Your Honor? All of the things he alleged, what, before I cut you off? These four causes of action that are raised are raised for the first time on appeal. They were never raised in the district court. Mr. Topchin filed a complaint that was essentially almost unintelligible. The district court ordered Mr. Topchin after a motion for clarification to file a new complaint and ordered him to state his legal theories and his reason for damages. Mr. Topchin was seeking $3 million in damages. Mr. Topchin, after an OSC, why the case shouldn't be dismissed, in a response, filed what the court then took as a response to the motion to dismiss and, again, did not state any legal theories and did not state his reason for the damages he sought. The district court could have then just dismissed the case right there. Instead, my client brought a second motion to dismiss on the amended complaint, discerning as best we could five different causes of action. None of these appellant disputes were improperly dismissed. Instead, on appeal, they raised three new causes of action that were never raised before the trial court at all. An appellant himself admits that what he filed with the district court was very difficult to understand. I'm going to quote from an appellant's brief. The district court, forced to discern what theories were advanced, understandably struggled to do so based on the pro se pleading. In the response to the motion to dismiss, appellant Mr. Topchin did not rebut or even address any of the arguments Chase made in the motion to dismiss. Well, as I read the briefs, I wrote this down. A sad case of a layman trying to represent himself. What can we do about it? Are you saying nothing? No, sir, but I'm saying even though Mr. Topchin is pro se, he has a duty to articulate some legal theory in response to a motion to dismiss, especially in order to do so by the district court. In my briefing, I highlight two Seventh Circuit cases that have come up against very similar circumstances. That's the Kirksey case and the County of McHenry case. In both cases, in response to a motion to dismiss, the plaintiff failed to address or rebut arguments raised. Mr. Campbell says the pleading meets the standards of Iqbal. Do those cases you cite involve pro se litigants? County of McHenry does not. I am not sure actually about Kirksey. According to your brief, a plaintiff brought personal suit on behalf of her deceased husband, who she alleged smoked some cigarettes. So maybe she represented herself. And looking at what she pled made me believe it was a pro se, but when I went back and looked at the case, I didn't find an indication that it was pro se. It did look like in this case she was represented by counsel on appeal, but it was difficult for me to determine whether it was actually pro se. Do you think that matters? No, because pro se litigants are held to the same standards as other litigants. They have to be able to articulate a legal theory. If they can't, the defendant doesn't know what they're defending against, if it's a tort claim, if it's a contract claim. Well, when we send this case back, you'll know, because you know now what Mr. Campbell is going to do. Well, Your Honor, that I don't think is fair to my client, who's already litigated this through. I don't mean to be cynical about this, but your client is not as pure as the driven snow. It's hard to pick up the Wall Street Journal every day finding that you're paying hundreds of millions of dollars. Your Honor, respectfully, I'm not sure that that's relevant to this particular case. Well, I don't know. I'm not sure. Well, getting, as I turn to the merits of this case, I think perhaps we could say something similar about Mr. Topshian. Well, right, right, right. That's a bad case. Why people get themselves, well, I guess I can understand why they get emotional about losing their homes. Let me just go through the chronology a little bit here and turn more to the merits. Mr. Topshian defaulted on his loan in 2009. He entered into, he applied for and entered into a trial payment plan during 2009. He made alleged, and these are just based on his allegations as best we could discern them. He made six or seven payments in 2009. That was part of the step one process under HAMP. In January, he received a step two process under HAMP. That step two explicitly said it would not be binding unless it was signed by the bank. He then skipped his January and February payments as his pleadings make out. And you can find that in appellate's appendix on six and seven, alleging that appellate made seven and eight months of trial payments prior to December 2009 and then regular payments from March 2010 to the end of the year in 2010. In March of 2010, Chase sent Mr. Topshian a letter. While Mr. Topshian doesn't list this in his amended complaint, he does describe it in his opposition to the original motion to dismiss. He received a letter from Chase stating, we are unable to offer you a home affordable modification because you did not make all of the required trial period plan payments by the end of the trial period. And you'll find that in appellate's appendix 15. I highlight that because that's not in my chronology in my brief, which was focused on the first amended complaint. And frankly, I just discovered it going through sort of the tortured writing as I prepared for this appeal. But he does admit that two months later, after skipping two payments, he received a letter from Chase saying he wasn't qualified to get a modification. After that, based on these allegations, which are very confused, there's back and forth about Chase trying to apply for a new modification, a second modification. Ultimately, Mr. Topshian says, and it's somewhat cryptic, that in August 2011, Chase told him he wouldn't be getting a modification. We did not perceive, nor did the district court perceive, a breach of contract claim. What it looked like was Mr. Topshian was saying that Chase refused to enter into a contract with him. But it's not our duty to try and figure out, it's my client's duty, to try and figure out what his allegations are and what his legal theories were. Now, how did your client respond to the request for a signed copy? Under the allegations, my client said that they didn't do that anymore, which sort of strains credulity as the document explicitly says it's not binding until it's signed by both parties. But that's what's alleged. So moving on, in terms of ratification, Mr. Topshian has missed 55 payments. He was already behind when he was making payments starting in March of 2010. My client was accepting far less than what it was owed, and it's not ratification to accept money in hopes of satisfying a preexisting debt. That's not ratification. It's especially not ratification because, as alleged, my client was sending all sorts of communications that, hey, there's no, I'm sorry, Your Honor. In some of these cases, I mean, it's, you know, you don't see everything that's involved, but in some of these cases, it does look like the bank, whichever bank it is, is sort of stringing the person along to get more payments, but they're never really going to be satisfied by it. Well, Mr. Topshian admits that in March, two months after he sent in his application, the bank told him he was not approved for a HAMP modification. After that, he already owed money on his mortgage, far more than what he was paying the bank. If he's choosing to send in payments, then the bank is certainly within its rights to accept them. I also take issue with the characterization that Mr. Campbell made, that Mr. Topshian says in his complaint that the banks started refusing payments starting in January 2011. If you look carefully at that allegation, at least it appeared to me, it says Mr. Topshian no longer made payments because he wanted to see what the results of the modification would be. So it wasn't that at some point the banks started refusing payments, at least as I read the allegations. But again, to the extent that the allegations are confusing, again, that burden was on Mr. Topshian to clarify, as the district court asked him to do, and state what his legal theories were. Was there a hearing in the district court before Judge Smith or was this done on the papers? Honestly, Your Honor, I'm not sure. I'm happy to find out and let the court know. Let's see. Back to Mr. Freeman's assurance that the agreement was accepted. Of course, that's an allegation. Yes. And what does that mean? Well, that should be determined after a trial or some sort of hearing. Your Honor, I guess, and I know my time's up, I would submit if the court were to remand this case, what it would be doing would be holding pro se litigants to a much different and lower standard than it would any other kind of litigant. Because any other kind of litigant would have to say in response to a motion to dismiss, as Kirksey holds very clearly and as McHenry holds, you have to tell me, are you suing on contract or tort? What's the legal basis of your theories? And, by the way, you have to rebut what's in the motion to dismiss because if I'm a district court and I find it plausible and you say nothing, you address nothing in it, then I'm going to dismiss and I'm within my rights of doing that. And I suppose from a practical standpoint, that's the only way our district courts can function, that they cannot act as pro bono counsel for the litigant. That's correct, Your Honor. But to the extent that these pleadings were not totally indecipherable, is that what Judge Smith said? Maybe he didn't use that language. The court struggled and we struggled as well to identify causes of action that we thought were the best. And I suppose maybe it's the best argument. I mean, why should we, like you say, hold the litigant to less than grant some liberality but at least require some minimum compliance with the rules of procedure in pleading? Well, Your Honor, to remand the… At what point do we say that he has met the, just marginally, the spirit of the rules of pleading? Our colleagues in the Seventh Circuit could be more technical than we, don't you agree, some of them? No, you don't have to agree, but you know me. I wouldn't speculate, Your Honor. But I shouldn't prolong this. I don't mean to be flippant about any of this. No. But that's why I said it. When I read these briefs, I said a sad case of a layman trying to represent himself. No, I understand, Your Honor. Just if it's remanded, then what it's saying is my client, if the court hadn't dismissed, my client would still not know what type of case they were defending. We would still have no idea what the charges were. Well, they would now. They would now. Well, once he had counseled, but assuming he was still pro se. Anyway, Your Honor, I think… Very well. Thank you for your argument.  Well, we'll give you a few more seconds. Thank you. Obviously, I don't mean to be flippant about any of this, but it is a matter of concern to what extent can district courts function when lay people who are very obviously caught up emotionally in this, losing their house, feeling though they've been misled by the bank, don't comply with orders to make their pleadings more definite. At that point, shouldn't your client have sought legal representation? He certainly did. I regret to say that mortgage attorneys are relatively difficult to find. A review of, for example, the National Association of Consumer Advocates, they do mortgage work. You won't find 10 of those in Missouri. I know them all. Mr. Topchian did. It's difficult. But, Your Honor, we're not in a standardless world. I agree with you that we have to have a standard of what we do. Here's what the Supreme Court said. A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. All pleadings shall be so construed as to do substantial justice. Eric Sundby Partis, 2007. This court in the Eighth Circuit said that, excuse me, in Stone, Judge Smith was on that panel, very much the same thing. And what they focus on is they say we will not supply additional facts or construct legal theories for plaintiffs that assume facts that have not been pleaded. The standard here is facts. My client pleaded facts in detail, and the Supreme Court has said liberally construe those to do justice. There's a reason why we set aside defaults, even a year later, and it's because the court favors federal rules of civil procedure in every state, doing things on the merits. I'm not asking this court to enter an order that awards my client as home, or even to find that the modification is valid, or to find that Mr. Freeman lied. I'm asking for the right for my client to return to court to prove his case. Either this was a modification, as the court suggested, or at least asked, or when Mr. Freeman said you've got a deal, keep sending us money, he deprived my client of something important, which was the right to make a decision about whether to send $10,000 more in to a company that was going to say no eventually anyway. Let's point out here that they concede in their brief that apparently this modification was under review for 19 months. They say that they were taking two years to decide whether or not to modify the loan, and in the interim, apparently what they were doing was accepting varying levels of payment that happened to correspond with the modification, but not accepting it. I would suggest if there's a story that's implausible, it's that one. I know my time's up. I would say, for those reasons, I would ask this court to reverse and remand so that we can decide this thing on all fours. Thank you. Thank you for the arguments on both sides. The case is submitted, and we will take it under consideration.